UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| GLENN FLOYD SMITH | § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:18–CV–00023 |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | § § § § § | |
| Defendant. | § § | |

## **MEMORANDUM AND RECOMMENDATION**

Plaintiff Glenn Floyd Smith ("Smith") seeks judicial review of an administrative decision denying him disability insurance benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 *et seq*.

All dispositive pretrial motions in this case have been referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Dkt. 4. Before the Court are competing Motions for Summary Judgment filed by Smith and Defendant Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration (the "Commissioner"). Dkts. 22, 24. Having considered the motions, responsive briefing, and applicable law, the Court RECOMMENDS that Smith's Motion for Summary Judgment (Dkt. 22) be DENIED, the Commissioner's Motion for Summary Judgment (Dkt. 24) be GRANTED, and the decision of the Administrative Law Judge ("ALJ") be AFFIRMED.

## BACKGROUND

Smith filed a claim for social security disability benefits under the Act, alleging disability as of December 18, 2014. Smith's application was initially denied, and denied again upon reconsideration. Subsequently, an ALJ held a hearing and found Smith was not disabled. Smith filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final. This appeal followed.

## APPLICABLE LAW

Section 405(g) of the Act governs the standard of review in disability cases. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance." *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987) (citation omitted). "Judicial review is to be deferential without being so obsequious as to be meaningless." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

"[A] claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (citation, internal quotation marks, and emphasis omitted). To determine if a claimant is disabled, the ALJ uses a sequential, five-step approach:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

"The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond*, 892 F.3d at 817 (citation omitted). "Before reaching step four, the Commissioner assesses the claimant's residual functional capacity ('RFC'). The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record. The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work." *Kneeland*, 850 F.3d at 754 (citations and internal quotation marks omitted).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). *Post hoc* rationalizations for an agency decision are not to be considered by a reviewing court. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). "The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. Conflicts in the evidence are for the Commissioner, not the courts, to resolve."

*Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-CV-230, 2017 WL 4351756, at *1 (S.D. Tex. Sept. 29, 2017) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

## PRO SE PLAINTIFF

Smith is proceeding pro se (self-represented) in this appeal of the ALJ's decision. As other courts have recognized, this imposes an additional layer of consideration since a lay plaintiff is often unfamiliar with legal terms of art such as "substantial evidence," and lacks expertise in the arcane rules governing Social Security regulations. *See Washington v. Barnhart*, 413 F. Supp. 2d 784, 791 (E.D. Tex. 2006). As explained by one court:

> No statute, regulation or court decision prescribes a precise analytical model for *pro se* actions seeking judicial review of adverse administrative decisions by the Commissioner of Social Security. Necessarily, the level of scrutiny rests in sound discretion of each reviewing court. However, several universal principles factor logically into that equation. Courts must construe *pro se* pleadings and arguments liberally in light of a party's lay status, but must zealously guard their *raison d'être* as neutral and unbiased arbiters. Courts are not bound to "scour the record for every conceivable error," but fundamental fairness and interests of justice require that courts not disregard obvious errors, especially when a lay litigant's ignorance may cause legal errors to go unrecognized.
>
> To strike a fair balance, the court should engage in more than a superficial review of the Commissioner's decision.

*Elam v. Barnhart*, 386 F. Supp. 2d 746, 752–53 (E.D. Tex. 2005) (internal quotation marks omitted). This Court wholeheartedly agrees with the *Elam* court and believes the best course is to examine the Commissioner's decision in the same manner as would an experienced lawyer when advising a potential client regarding advisability of pursuing an

action for judicial review. *See id.* at 753. To that end, the Court believes a seasoned practitioner likely would engage in three critical inquiries:

1. Does the Commissioner's decision generally reflect the protocol established in the Social Security Act, the Commissioner's own regulations, and internal policies articulated in Social Security Rulings?

2. Were the Commissioner's critical fact findings made in compliance with applicable law?

3. Does substantial evidence support those critical findings?

*Washington*, 413 F. Supp. 2d at 792. This analytical framework will be utilized to help guide the Court's analysis in this case.

## DISCUSSION

**A.     FIVE-STEP SEQUENTIAL ANALYSIS**

The first question an experienced lawyer would ask is whether the ALJ followed the five-step sequential analysis required by the social security regulations. The ALJ clearly utilized this process.

At step one, the ALJ found that Smith had not engaged in substantial gainful activity since December 18, 2014. At step two, he found that Smith had a medically determinable severe impairment, mild degenerative disc disease. The ALJ proceeded to step three and found that none of Smith's impairments or combination of impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of step four, the ALJ assessed Smith's RFC, as follows:

After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform medium work as defined in 20 CFR

> 416.967(c) except the claimant cannot claim ladders, ropes or scaffolds and must avoid exposure to dust, fumes, odors, and pulmonary irritants.

Dkt. 11-3 at 22. At step four, the ALJ found that Smith did not have any past relevant work. At step five, the ALJ considered Smith's age, education, work experience, and RFC in conjunction with the Medical Vocational Guidelines and the testimony of a vocational expert to determine if there was any other work he could perform. At the time of the ALJ's hearing, Smith was 58 years old, with a high school education, and without past relevant work. The ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate." *Id.* at 29.

In sum, the Court finds that the ALJ's decision adequately reflects the protocol established by the Act for determining a claimant's disability status. Thus, there is no apparent legal error in the manner that the ALJ went about reaching his determination that Smith is not disabled.

**B.    CRITICAL FACT FINDINGS AND SUBSTANTIAL EVIDENCE**

An experienced lawyer would next address the second and third questions outlined above—whether the ALJ's critical fact findings were made in compliance with applicable law and whether substantial evidence supports these findings. The Court will address these issues together.

"While every finding in the five-step sequential analysis is important, only findings adverse to the claimant are likely to be a source of reversible error." *Washington*, 413 F. Supp. 2d at 792–93. Here, three findings fall into this category.

    1.      The ALJ's finding at step two of a single severe impairment, mild degenerative disc disease;

    2.      The ALJ's finding at step three that Smith's severe impairment did not meet or equal presumptively-disabling impairments catalogued in "the Listings;" and

    3.      The ALJ's finding at step four that Smith's RFC allows him to perform a modified range of medium work.

The Court will address each finding in turn.

**1. Severe Impairment Findings:**

An impairment is severe if it "significantly limits your physical or mental abilities to do basic work activities." 20 C.F.R. § 404.1520(c). Under Fifth Circuit precedent, "an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Salmond*, 892 F.3d at 817 (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)). At this step, it is the claimant's burden to make a *de minimis* showing that his impairment is severe enough to interfere with his ability to work. *See Anthony v. Sullivan*, 954 F.2d 289, 294 n.5 (5th Cir. 1992).

Here, the ALJ considered Smith's degenerative disc disease, along with several additional physical ailments. Based on the available objective medical evidence, the ALJ determined that Smith had the severe impairment of mild degenerative disc disease. Although this particular portion of the ALJ's finding is not adverse to Smith, the Court notes that substantial evidence supports this determination. The Court now turns to Smith's additional physical ailments.

The ALJ considered the following additional physical ailments: tinnitus, shoulder degenerative joint disease, tuberculosis, and lung nodules. The ALJ thoroughly discussed each of these physical ailments, giving his reasoning and citing evidence as to support his ultimate determination that these additional physical ailments were non-severe impairments. The ALJ specifically noted an "absence of documented objective evidence indicating these conditions cause any limitation on the claimant's ability to perform basic work related activities." Dkt. 11-3 at 21. As to the above specified additional physical ailments, the ALJ clearly conducted an adequate analysis of the record in reaching his determination.

The Court finds, therefore, the ALJ applied the correct legal standard and substantial evidence supports the his severe impairment findings.

**2. The Listings Findings:**

If a claimant is found to have a severe impairment, the ALJ proceeds to step three: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Appendix 1 lists various impairments and indicators of their medical severity. Under the regulations, if the claimant's impairment meets or equals a listed impairment in Appendix 1, the ALJ must find the claimant disabled without considering the claimant's age, education, and work experience. *See* 20 C.F.R. § 404.1520(d). At step three, the burden of proof, again, rests with the claimant. "That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a [step three] impairment determination." *Washington*, 413 F. Supp. 2d at 793 (collecting cases). When a claimant fails to meet this

8

burden, "courts must conclude that substantial evidence supports the ALJ's finding that Listings-level impairments are not present." *Id.* (citing *Selders v. Sullivan*, 914 F.2d 614, 620 (5th Cir. 1990)).

The ALJ considered Listing 1.04 (disorders of the spine).[1] He compared Listing 1.04 with Smith's severe impairment, mild degenerative disc disease, and found that Smith's "spinal problems do not meet or equal [L]isting 1.04, disorders of the spine, because the record does not demonstrate compromise of a nerve root . . . or the spinal cord." Dkt. 11-3 at 22. The ALJ also found that Smith's severe impairment does not meet or medically equal any listing because "there is no evidence of nerve root compression and he is able to perform fine and gross movements and ambulate effectively." *Id.*

After reviewing the record, the Court finds that Smith failed to point to any evidence that demonstrated his severe impairment met the requirements of Listing 1.04. Thus, the ALJ applied the Appendix 1 listings in the manner contemplated by the regulations and gave sufficient reasoning for his ruling. The Court finds, therefore, that the ALJ did not commit legal error at step three. Because Smith failed to carry his burden of proof, the Court also concludes that substantial evidence supports the ALJ's step three finding.

---

[1] Listing 1.04 governing disorders of the spine requires "compromise of a nerve root . . . or the spinal cord, with (A) Evidence of nerve root compression . . . or (B) Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy . . . or (C) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A)–(C).

9

### 3. RFC Findings:

Before considering steps four and five, the ALJ must determine the claimant's RFC. "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from [his] impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011). "The [ALJ] then utilizes this assessment in determining whether a claimant can still perform past relevant work (step four) or alternative available work as it is generally performed in the national economy (step five)." *Elam*, 386 F. Supp. 2d at 756.

During his review of Smith's medical record, the ALJ found that although Smith received treatment for his severe impairment, the overall clinical findings "simply do not justify the disabling limitations the claimant alleges in the testimony at hearing." Dkt. 11-3 at 27. The ALJ determined that Smith has the RFC for work at the medium exertional level and stated: "the record supports the limitation to medium work with standing and walking limited to 6 hours in an 8-hour workday, but never climbing ladders, ropes or scaffolds and must avoid exposure to fumes, dusts, odors and pulmonary irritants due to claimant's mild degenerative disc disease." *Id.*

An experienced lawyer would examine the ALJ's decision and the underlying evidentiary record with respect to the following questions:

1. Whether the ALJ erred in determining Smiths' RFC;
2. Whether the ALJ erred in evaluating Smith's testimony; and
3. Whether the ALJ erred in determining Smith can perform available work.

   a. **Medium RFC Determination:**

*Function-by-Function Assessment:* The social security regulations direct ALJs to consider seven ordinary physical functions. *See* 20 C.F.R. §§ 404.1545(b), 416.945(b). In a social security ruling, the Commissioner requires an ALJ to perform a function-by-function assessment before expressing the RFC in terms of exertional levels or work. *See* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

Here, the ALJ cited the correct social security regulations governing his RFC determination, indicating his awareness and intention to apply the governing standards. The ALJ performed a function-by-function assessment before he expressed Smith's RFC. His discussion examines the relevant physical functions, to the extent there is evidence thereof, before he expresses Smith's RFC. There is no apparent structural error in the manner in which the ALJ went about determining Smith's RFC.

*Weight Afforded to Examining and Non-Examining Physicians:* An ALJ is only required to give "great weight" to a claimant's treating physician's opinion "on the nature and severity of a patient's impairment." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citations omitted). In this case, the ALJ notes that the record "does not contain any opinions from treating or examining physicians that identify any objective medical findings to support a conclusion indicating the claimant was disabled." Dkt. 11-3 at 26. Because Smith did not submit an opinion by a treating physician regarding Smith's physical conditions, the ALJ had the discretion to reject or accept any of the medical opinions in the record. In his decision, the ALJ outlined the roles the treating or examining physicians played in Smith's treatment and gave clear reasoning as to why he

11

gave each opinion little, some, or great weight. The Court finds no error in the ALJ's treatment of these opinions.

### b. Claimant Credibility Determination:

When assessing complaints of pain, the ALJ must determine whether there is a medically determinable impairment that is capable of producing that pain. *See Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).

> The regulations explain that, when the medical evidence reveals a medically determinable impairment that could produce pain, the analysis must focus on how the intensity and persistence of the pain limits the claimant's capacity for work. In order to evaluate the intensity and persistence of pain, the ALJ considers all available evidence, including medical history, medical signs and laboratory findings, statements of treating providers, and the subjective testimony of the claimant.

*Eovaldi v. Astrue*, 729 F. Supp. 2d 848, 862 (S.D. Tex. 2010) (citations omitted).

"Pain, in and of itself has been recognized as a disabling condition under the Act, but only where it is constant, unremitting, and wholly unresponsive to therapeutic treatment." *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983) (collecting cases). Not all pain is disabling, and the fact that a claimant experiences some pain or discomfort while working "will not render [him] disabled." *Smith v. Astrue*, No. G-07-428, 2008 WL 3832516, at *21 (S.D. Tex. Aug. 15, 2008) (citation omitted).

It is well-settled in the Fifth Circuit that an ALJ's credibility findings of a claimant's subjective complaints are entitled to deference. *See Chrisner v. Astrue*, 249 F. App'x 354, 356 (5th Cir. 2007) (citing *Newton*, 209 F.3d at 459). The evaluation of a claimant's subjective symptoms is within the province of the ALJ, who has had the opportunity to observe the claimant. *See Hames*, 707 F.2d at 166.

Here, the Court finds that the ALJ did not err in his evaluation of Smith's credibility. In his decision, the ALJ reviewed and synthesized the entire medical record, including Smith's sworn testimony. The ALJ also discussed and considered Smith's daily activities; the location, duration, frequency, and intensity of his pain; factors that precipitated and aggravated his pain; and his perceived non-compliance with treatment recommendations, appointments, and prescribed medication. The ALJ ultimately found that Smith's statements considering the intensity, persistence, and limiting effects of his symptoms were not "entirely consistent with the medical evidence and other evidence in the record." Dkt. 11-3 at 23. The ALJ noted that Smith stopped working for reasons unrelated to his condition (i.e. incarceration) and the Smith testified that he has not attempted to engage in work activity since his release from prison. Moreover, the ALJ concluded:

> The record reveals the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date. The fact the impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work activity.

*Id*. at 24. Altogether, the record substantiates the ALJ's finding that Smith is not disabled within the meaning of the Act. The Court may not second-guess the ALJ's synthesis of the record by re-weighing the evidence. *See Rodriguez v. Colvin,* No. 5:16-CV-00053, 2017 WL 4354619, at *6 (S.D. Tex. Sept. 29, 2017). The Court finds that the ALJ considered Smith's pain and conducted an adequate analysis of his credibility.

### c. Available Work Determination:

Finally, at step five, the ALJ consulted a vocational expert who testified that an individual with Smith's age, education, work experience, and RFC can perform work such as a dishwasher, retail stocker, and hand packager (examples of occupations medium in exertion and unskilled in nature). "Such testimony constitutes substantial evidence when the hypothetical question which elicited it incorporates all disability that the ALJ has found, the disabilities recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent with the expert vocational testimony." *Lastrape v. Barnhart*, 376 F. Supp. 2d 704, 715 (E.D. Tex. 2005), *report and recommendation adopted* (Apr. 21, 2005) (citing *Morris v. Bowen*, 864 F.2d 333 (5th Cir. 1988)).

Here, the ALJ posited the following hypothetical question: "Let's assume a person [is] limited to sitting six hours and walking six hours, lifting 50 pounds occasionally and 25 pounds frequently. [He] will need to avoid dust, fumes, odors[.] Any jobs going to be available in the regional or national economy?" Dkt. 11-3 at 63. The ALJ's hypothetical question reasonably incorporated both the RFC and limitations. In response, the vocational expert cited jobs in the national economy taking these restrictions into account. The ALJ's reliance on such testimony was valid and his determination is supported by substantial evidence.

**C. SMITH'S OTHER ARGUMENTS**

In the conclusion of his motion for summary judgment, Smith makes the following arguments: (1) "ALJ Whitney did not consider and/or omitted the combination of

14

impairments, i.e. (degenerative disc disease and neuroformina stenosis, (radiculopathy), in his finding of facts and conclusions of law"; (2) "ALJ Whitney . . . added 'new' steps to the sequential evaluation analysis"; (3) the ALJ "denied Plaintiff's request for a medical expert to prove Plaintiff had neuroformina stenosis and degenerative disc disease"; and (4) the ALJ "made findings no expert testified about [regarding] Plaintiff's condition." Dkt. 22 at 8–9.

Based on the entirety of Smith's motion, his first argument is actually two-fold. He takes issue with the ALJ's failure to specifically discuss neuroformina stenosis, and then he objects to the ALJ's failure to specifically consider the ailment in conjunction with his degenerative disc disease. Smith is correct that the ALJ never specifically discusses neuroformina stenosis. However, this is not error because an ALJ can consider evidence without directly addressing it and he need not discuss every piece of evidence contained in the record. *See, e.g., McFadden v. Astrue*, 465 F. App'x 557, 559 (7th Cir. 2012) ("an ALJ may not ignore entire lines of evidence contrary to the RFC determination but she need not discuss every piece of evidence in the record") (collecting cases); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) (holding that an ALJ can consider evidence without directly addressing it); *Penalver v. Barnhart*, No. SA–04–CA–1107–RF, 2005 WL 2137900, at *6 (W.D. Tex. July 13, 2005) ("The ALJ may not have discussed all of the evidence in the record to the extent desired by Plaintiff, but the ALJ is only required to make clear the basis of his assessment—he need not discuss all supporting evidence or evidence rejected."); *Jefferson v. Barnhart*, 356 F. Supp. 2d 663, 675 (S.D. Tex. Mar. 12, 2004) ("in

15

interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence").

Moreover, although Smith does not believe the ALJ considered the ailment, the record suggests otherwise. In his motion for summary judgment, Smith points to Exhibit 5F of the record as evidence of his neuroformina stenosis ailment. The ALJ specifically cites to Exhibit 5F several times in his decision, suggesting that he considered all ailments contained in the exhibit. But even if the ALJ failed to consider this one ailment, Smith has not demonstrated that such a failure would amount to anything more than harmless error. An examination of Exhibit 5F reveals only a passing reference to neuroformina stenosis in a radiology report:

> **Radiology Reports**
> PAGE: 11 OF 88
> Printed On Oct 3, 2015
>
> There is suggestion of a transitional vertebra with lumbarization of the S1 vertebra.
>
> The visualized distal cord signal is unremarkable with the conus ending at the L1-2 level.
>
> There is congenital narrowing of the spinal canal.
>
> T12-L1: No significant stenosis.
>
> L1-2: No significant stenosis.
>
> L2-3: Minimal epidural fat. No significant stenosis.
>
> L3-4: Mild facet and ligamentum flavum hypertrophy. Minimal epidural fat. There is a small concentric disc bulge present. This results in mild central canal stenosis and mild to moderate bilateral neural foramina stenosis.
>
> L4-5: Minimal facet hypertrophy. Small broad-based disc bulge with mild endplate changes. There is mild stenosis of the lateral recess bilaterally. There is mild bilateral neuroforamina stenosis.
>
> L5-S1: Mild facet and ligamentum flavum hypertrophy. There is a small broad-based disc osteophytic disease. In addition there is a focal lobulated 1 cm x 1.5 cm central disc bulge which impinges on thecal sac. It does result in moderate stenosis of the lateral recess bilaterally. There is mild central canal stenosis. There is moderate right neuroforamina stenosis and mild left neuroforamina stenosis.

Dkt. 11-13 at 12. This lone reference contains absolutely no information suggesting additional physical limitations that were not already considered in the ALJ's RFC determination. In other words, Smith has not shown that if the ALJ had specifically considered the neuroforamina stenosis ailment, he would have reached a different conclusion. Thus, this alleged error is harmless at best. *See, e.g., Williams v. Colvin*, No. CV H–15–82, 2016 WL 1182220, at *8 (S.D. Tex. Mar. 28, 2016) ("Harmless error exists when there is no possibility that the ALJ would have reached a different conclusion absent the error.") (citations, internal quotation marks, and alterations omitted).

Smith's second contention—that the ALJ added "new" steps to the sequential evaluation analysis—fairs no better. As detailed above, the ALJ clearly discussed the five steps required by the social security regulations and did not add any "new" steps to the analysis. The ALJ did not err in his analysis.

Smith's next argument—that the ALJ denied his request for a medical expert to prove he had neuroformina stenosis and degenerative disc disease—is also unmeritorious. Although Smith contends that the ALJ erred by denying his request for a medical expert, Smith points to no evidence that, had the ALJ allowed a medical expert, an expert's testimony would have adduced any information that could have changed the result of the proceeding. "Because [Smith] fails to show that [he] was prejudiced by the ALJ's denial of h[is] request for a medical expert, h[is] argument . . . is without merit." *Glover v. Barnhart*, 81 F. App'x 513, 515 (5th Cir. 2003) (citation omitted).

Finally, Smith argues that the ALJ made certain findings that are not supported by the testimony of any expert. An ALJ is not required to rely upon the testimony of an

17

expert. As detailed above, the ALJ must consider a myriad of sources to determine the relevant facts in every proceeding, including medical records. Here, the ALJ correctly relied on the objective medical evidence to support his decision. The Court has already determined that the ALJ's findings are supported by substantial evidence, thus Smith's argument fails.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that Smith's Motion for Summary Judgment (Dkt. 22) be DENIED, the Commissioner's Motion for Summary Judgment (Dkt. 24) be GRANTED, and the decision of the Administrative Law Judge be AFFIRMED.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 19th day of September, 2018.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE